P. S. Edwards and Helen R. Edwards v. Commissioner. P. S. Edwards v. Commissioner.
P. S. Edwards & Helen R. Edwards v. Commissioner
Docket Nos. 40059, 40060.
United States Tax Court
1953 Tax Ct. Memo LEXIS 119; 12 T.C.M. (CCH) 1045; T.C.M. (RIA) 53307; September 10, 1953
*119 1. A joint venture bought real property for the purpose of building a hotel and apartments. Zoning regulations prevented carrying out the construction as planned and attempts to have these modified were unsuccessful. Thereafter, the venture placed the property with a broker for sale, and authorized subdivision and sale of the property in 12 parcels. The broker made sales in the taxable years. Held, the property was not held for sale to customers in the ordinary course of trade or business and the profits represented capital gain to the participants. 2. One of the joint ventures withdrew making a settlement with the others. Held, the settlement was a closed transaction in which the continuing participants realized gain. Campbell Napier, Esq., 830 West Peachtree Street Building, Atlanta, Ga., for the petitioners. D. Z. Cauble, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in income tax of $9,053.87 for 1947 and $648.30 for 1948. Two questions are presented for decision: (1) Whether the gain on the sale of certain real estate constituted ordinary income or capital gain; *120 and (2) whether the petitioners realized taxable income from a transaction in which another member of a joint venture of which the petitioners also were members, acquired a note from the venture upon his withdrawal therefrom for a consideration in excess of the note's book value. Findings of Fact Some of the facts have been stipulated and are found as stipulated. P. S. Edwards, hereinafter called the petitioner, and Helen R. Edwards are husband and wife residing in Library, Pennsylvania. They filed separate income tax returns for 1947 and a joint return for 1948 with the collector of internal revenue at Pittsburgh, Pennsylvania. For many years the petitioner has been actively engaged in the construction and building material field and his income from that business has been substantial. In 1947 and 1948 the petitioner had income of $39,087.30 and $90,116.28, respectively, from sources other than the joint venture involved herein. The petitioner first visited Florida in 1944, at which time he bought a home on the Gulf of Mexico. During the years in issue he spent one month in 1947 and six weeks in 1948 in Florida. A good portion of his time there was spent in recreation. *121 In 1945 a real estate broker sold a tract of land having 1800 water front feet in the Town of Redington Beach, Florida on the Gulf of Mexico to the petitioner and four others, C. E. Redington of St. Petersburg, Florida, and C. E. Christman, Herbert Dean, and P. N. Burgess, all of McKees Rocks, Pennsylvania. The consideration for the sale was $100,000. Part of Redington Beach had previously been developed by C. E. Redington, but the tract here involved was undevolped at the time of the purchase. The five purchasers were joint venturers and called the venture "P. S. Edwards and Associates". The venture will hereinafter be called "the Associates". The Associates spent some $2,000 for architect's plans and $716.05 for other improvements and the property had a basis in their hands of $102,716.05 for determining gain or loss. The land was purchased for the purpose of building 8 apartment houses and a hotel facing the Gulf of Mexico. It also was planned to build a garage for housing the automobiles of the hotel guests. The Associates orally requested the Town of Redington Beach to rezone the property necessary to build the garage and apartments. In July and August of 1946 the Town amended *122 its zoning ordinance so as to prohibit the construction of apartments on some of the land where the Associates planned to build and the permission to build the garage also was voted down. This made the contemplated construction of a hotel and apartments an unsound investment at the time. Later in 1946 and only after rezoning efforts had failed, the Associates placed the entire tract for sale with a real estate broker. He was unable to find a purchaser for the entire tract and suggested subdivision. This was approved by the Associates and the agent attended to the platting into 12 separate parcels which was completed on January 24, 1947. Selling entirely through licensed real estate brokers, 1581 feet were sold in 1947 and the remaining 219 feet in 1948. The percentage of the total investment of each venturer and the percentage of profits received by each was as follows.. Percentage
Percentage
of profits
of total
and losses
investment
received
P. S. Edwards
20%
27 1/2%
C. E. Redington
20%
27 1/2%
C. E. Christman
20%
15%
Herbert Dean
20%
15%
P. N. Burgess
20%
15%
The petitioner received a larger percentage because he executed deeds *123 and other legal documents incident to the transfer of the property, title to which was vested in him. In this connection the petitioner made two trips to Florida in 1947 and one trip in 1948. The petitioner's share of profits from the joint venture in 1947 was $13,892.58 and in 1948 was $3,538.87. He did not maintain an office in Florida nor was he licensed to sell real estate. Neither did he advertise real estate for sale. Except for the transactions here involved the petitioner did not buy or sell other real estate during 1947 and 1948. In this 1947 return the petitioner reported his profits from the Associates as ordinary income. In his 1948 return he reported such profits as long-term capital gain. The returns of the Associates for those years report the profits in a similar fashion. The other members of the Associates treated the profits of the Associates as ordinary income. The returns of the Associates were prepared by the same accountant who prepared the petitioner's returns. There were substantial errors in these returns, income being understated by about $50,000 in 1947 and nearly $5,000 in 1948. This has been corrected by stipulation. The real property here involved *124 was not held or acquired primarily for sale to customers in the ordinary course of business. On September 8, 1948, C. E. Redington withdrew from the Associates. At the time of Redington's withdrawal all of the property at issue had been sold. No other real property was being held by the Associates, but there were a number of unpaid balances remaining on outstanding notes receivable. At the time of Redington's withdrawal, his interest as reflected on the books of the Associates was in the amount of $16,503.21. In a simultaneous transaction at the time of his withdrawal, Redington paid in $20,000 and canceled his interest in the Associates in consideration for a note then held by the Associates which had a basis of $25,949.82. The remaining members continued as a joint venture at least through the remainder of the year 1948. Opinion The first issue presents the oft puzzling fact question of when is property held primarily for sale to customers in the ordinary course of trade or business. If the property here involved was so held, the profit would be taxable as ordinary income. If not, then the profit is properly treated as capital gain. The real estate here was first acquired *125 in 1945, not for resale, but for the purpose of constructing thereon a hotel, garage, and apartment houses. This purpose failed of accomplishment because of zoning troubles. The Associates then determined to divest themselves of ownership. They first tried to sell the tract as a whole through a broker. They did not hold themselves out as dealers in real estate, maintain an office for selling the tract, or otherwise directly advertise. About the only activity with relation to the sale conducted by the Associates was to hire the broker and, when a unit sale of the property failed, authorize him to subdivide. This he did by platting 12 lots. These were then sold individually through brokers over a period extending from 1947 through part of 1948. We thus have the predicament of a taxpayer who acquired property not for sale but who, finding he could not carry out his original purpose of building thereon, decided to sell. Thereafter, he did no more than outlined above. Did this put him in the real estate business? Did the property thus become property held by him primarily for sale to customers in the regular course of his business? We think not on the facts as we have found them. Apparently *126 the respondent would agree had the tract been subjected to sale as a unit On the record we conclude that neither the Associates nor the petitioner was in real estate business. The purchase and sale of the property was an isolated transaction and was not part of their business. There are, of course, many cases on this question which could be cited here, and which have been cited by the parties on brief. Nevertheless, the question is one of fact and we see no useful purpose to be served by citing the available cases. We conclude that the respondent erred on this question. On the second question presented, the facts are as set out in our findings. Briefly, Redington withdrew from the Associates in 1948. At that time he paid $20,000 in cash to the Associates, took out of the assets of the Associates a note having a basis of $25,949.82, and canceled his interest in the venture which at that time had a book value of $16,503.21. On these facts the respondent argues that this transaction was a closed transaction and that the Associates, in effect, received $36,503.21 ($20,000 plus $16,503.21) for a note having a value of $25,949.82 and thus realized a gain of $10,553.39. On the other *127 hand, the petitioner relies on O-816, 1 C.B. 168 (1919) where it is stated: "Where a partnership distributes any part of its assets in kind, and a partner, in lieu of an undivided fractional interest in the whole, receives a full interest in a certain part of the assets distributed, such a change in interest does not constitute a closed transaction reflecting gain or loss." The petitioner also relies on Sol. Op. 42, 3 C.B. 61 (1920) where it is stated: "If a retiring partner or the estate of a deceased partner takes his portion of the partnership property in kind there is no realization of income, such realization being postponed until the property so received is in turn sold." He also claims that section 113 (a) (13), Internal Revenue Code[1] is applicable. *128 We agree with the respondent and think he has correctly analyzed the transaction. It was closed so far as the continuing members of the Associates were concerned. In essence, Redington canceled his $16,503.21 interest in the venture, paid in $20,000 cash, and took out an asset with a basis of $25,949.82. This resulted in a gain of $10,553.39 to the Associates, as the respondent determined. The petitioner's citations of authority are not controlling. The respondent is sustained on this point. Decision will be entered under Rule 50. Footnotes
1. SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. - The basis of property shall be the cost of such property; except that - (13) Partnerships. - If the property was acquired, after February 28, 1913, by a partnership and the basis is not otherwise determined under any other paragraph of this subsection, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. If the property was distributed in kind by a partnership to any partner, the basis of such property in the hands of the partner shall be such part of the basis in his hands of his partnership interest as is properly allocable to such property.↩